[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM DATED JULY 17, 1995
This case involves resale certificates. Unhappily, it involves many resale certificates. It also involves sales of tangible personal property to consumers who have, at least in a general sense, provided resale certificates. Unhappily, it involves many such sales. More unhappily still, the parties, unable to resolve differences involving thirty-eight resale certificates and a stupefying number of invoice items, have submitted virtually all of these multitudinous matters to the court. Most unhappily of all, the nature of these matters is such that they can be judicially resolved only on a retail, as opposed to a wholesale basis. In this state of affairs, I am called upon to be something of a glorified auditor. This is not an ideal use of judicial resources. It must, however, be accepted as an unavoidable judicial responsibility under the circumstances. With the greatest possible good humor, I don my green eyeshade and go to work.
Arkin-Medo, Inc. ("Arkin-Medo") is a New York corporation that sells prepress commercial products to the graphic arts industry. It sells substantial amounts CT Page 8670 of film, chemicals, and paper, in addition to a wide variety of equipment, including tape and razor blades. Its customers are primarily commercial printers, commercial photographers, and trade shops. Trade shops produce prepress work, such as films and flats, for commercial printers. Some businesses are highly specialized and function only as trade shops. On the other hand, many commercial printers do trade shop work for other commercial printers in addition to the everyday commercial printing that they do for their retail customers. Many commercial printers, when they buy Arkin-Medol's products, do not know whether they will use those products for trade shop work or commercial printing.
Arkin-Medo sells most of its products in New York and New Jersey. Approximately five percent of its sales are made in Connecticut. Its Connecticut sales alone, however, amount to approximately $3.4 million a year. Arkin-Medo contends that virtually all of these sales are for resale. It takes resale certificates from virtually all of its customers, but, as will be seen, this practice does not automatically result in a finding that its sales are, in fact, for resale.
In February 1991, the Connecticut Department of Revenue Services ("DRS") commenced an audit of Arkin-Medo. The period ultimately audited was January 1, 1988, to September 30, 1991. In actually performing the audit, the parties agreed that Arkin-Medo's Connecticut sales during a particular month would be audited in detail. The month mutually selected was August 1990. All of the disputed sales about to be discussed occurred during that month. Although the evidence on this point is unclear, the disputed sales appear to represent about half of Arkin-Medo's total Connecticut sales during the month in question.
The DRS concluded that a substantial number of sales were not, in fact, sales for resale. A deficiency was consequently found. Arkin-Medo filed a timely appeal to this court.
At trial, the parties presented the court with both CT Page 8671 testimony and documentary exhibits pertaining to the disputed sales. The documentary evidence consists primarily of resale certificates and invoices. Forty-eight resale certificates, conveniently numbered as Ex.1-48, were in dispute at the commencement of trial. The status of ten of these certificates (Ex. 7, 8, 18, 20, 26, 27, 28, 35, 40 and 45) has since been resolved by the parties, leaving thirty-eight certificates in dispute. All of these certificates have one or more attached invoices, and each invoice represents one or more purchased items. A summary of these items is contained in Revised Exhibit 51. In two of these cases (Ex. 17 and 22), Arkin-Medo acknowledges that additional invoices are missing and, with respect to these invoices, claims nontaxability based on the resale certificate alone.
Before these documents are examined in detail, certain general principles of taxation involving retail sales and resale certificates must be considered. This inquiry must begin with the governing statutes and regulatory materials. Conn. Gen. Stat. § 12-408(1) imposes a sales tax on "all retailers" for "the sale of all tangible personal property sold at retail" in Connecticut. Conn. Gen. Stat. § 12-407(12)(a) defines a "retailer" as a "person engaged in the business of making sales at retail." Conn. Gen. Stat. § 12-407(3) defines a "sale at retail" as "a sale for any purpose other than resale in the regular course of business of tangible personal property."
Prior to August 22, 1991, Conn. Gen. Stat. § 12-410
provided in relevant part as follows:
 (1) Presumption of taxability; resale certificate. For the purpose of the proper administration of this chapter and to prevent evasion of the sales tax it shall be presumed that all gross receipts are subject to the tax until the contrary is established. The burden of proving that a sale of tangible personal property or service is not a sale at retail is upon the person who makes the sale unless he takes from the purchaser a certificate to the effect that the property is purchased for resale. CT Page 8672
 (2) Effect of certificate. The certificate relieves the seller from the burden of proof only if taken in good faith from a person who is engaged in the business of selling tangible personal property and who holds the permit provided for in Section 12-409 and who, at the time of purchasing the tangible personal property, intends to sell it in the regular course of business or is unable to ascertain at the time of purchase whether the property will be sold or will be used for some other purpose.
 (3) Form of certificate. The certificate shall be signed by and bear the name and address of the purchaser, shall indicate the number of the permit issued to the purchaser and shall indicate the general character of the tangible personal property sold by the purchaser in the regular course of business. The certificate shall be substantially in such form as the commissioner prescribes.
 (4) Liability of purchaser. (a) If a purchaser who gives a certificate makes any use of the service or property other than retention, demonstration or display while holding it for sale in the regular course of business, the use shall be deemed a retail sale by the purchaser as of the time the service or property is first used by him, and the cost of the service or property to him shall be deemed the gross receipts from such retail sale.
On August 22, 1991 — within the audit period but after the test month actually used in the audit itself — Subsection (2) was amended by the addition of the following sentence:
 A certificate to the effect that property is purchased for resale taken from the purchaser by the seller shall be deemed to be taken in good faith if the tangible personal property purchased is similar to or of the same general character as property which the seller could reasonably assume would be sold by the purchaser in the regular course of business.
1991 Conn. Acts No. 91-3, § 112 (June Spec. Sess.). CT Page 8673
A regulation, promulgated in 1980, also bears on the issue of good faith. It provides that:
 The good faith of the seller will be questioned if he has knowledge of facts which give rise to a reasonable inference that the purchaser does not intend to resell the property, as, for example, knowledge that a purchaser of particular merchandise is not engaged in the business of selling that kind of merchandise.
Conn. Agencies Regs. § 12-426-1(c).
Certain policy statements of the DRS must also be mentioned. During the course of the calendar year 1990, the DRS promulgated three different policy statements with respect to printers. The final, and most pertinent, statement is Ruling 90-73, promulgated on December 13, 1990, which advises the printing industry on "the purchase of materials such as film, paper and chemicals." The ruling concludes that, in this context, "the use of resale certificates is limited to the purchase of the ingredients or components which physically become part of the tangible personal property sold to the customer."
Arkin-Medo's tax claims are limited to the sale for resale exemption. It expressly does not claim the production materials exemption set forth in Conn. Gen. Stat. § 12-412(18).
On its face, Conn. Gen. Stat. § 12-410 establishes a presumption and a shifting burden of proof. It is "presumed that all gross receipts are subject to the tax until the contrary is established." Section 12-410(1). The seller has the burden of proof that a particular sale is not at retail unless it establishes two factual predicates. The first predicate is that it has taken "from the purchaser a certificate to the effect that the property is purchased for resale." Id. The second predicate is that the certificate was "taken in good faith." Section 12-410(2). If both of these predicates are established, the presumption of taxability disappears. If they are not, the presumption remains. CT Page 8674
Each of these predicates must be examined with some care. The first is that the seller "takes from the purchaser a certificate that the property is purchased for resale." Section 12-410(1). The term "the property" is significant. That term plainly refers to the particular type of property sold in the "sale" at issue. A resale certificate, however perfect its form in the abstract, is useless to the seller unless it states that the particular type of property that is being purchased is purchased for resale.
The "good faith" with which a seller must take a resale certificate is not statutorily defined. "Good faith" is ordinarily a subjective standard, — see Phillipe v.Thomas, 3 Conn. App. 471, 475, 489 A.2d 1056
(1985) — but the requirements of the tax law are somewhat distinctive. The use of a subjective test to determine what transactions are or are not subject to the sales and use tax is "a result to be avoided to ensure consistency and fairness in the imposition of such taxes." A.B. Hirschfeld Press, Inc. v. City County ofDenver, 806 P.2d 917, 923 (Colo. 1991). Both Arkin-Medo and the DRS acknowledge that it is appropriate to construe § 12-410(2) as setting forth an objective standard. They are not in entire accord as to exactly what that objective standard is, and there is some question as to whether the 1980 regulation or the 1991 statutory amendment ought to be controlling in this case. The substantive differences between the regulation and the statutory amendment are, however, quite minor, and the determination of good faith remains, at bottom, a common sense process. The court must ask what reasonable inferences can be drawn from the facts known to the seller. If those inferences reasonably lead to the conclusion that the property being purchased will probably not be resold, the sale is not a sale for resale no matter how many resale certificates have been signed. If those inferences lead to the conclusion that the property probably will be resold, a resale certificate has been taken in good faith.
There is one important caveat to this rule. Section12-410(2) expressly allows a purchaser to give a resale certificate when it "is unable to ascertain at the time CT Page 8675 of purchase whether the property will be sold or will be used for some other purpose." If the facts available to the seller at the time of sale reasonably indicate that the purchaser has this inability to ascertain, the seller may accept a resale certificate in good faith.
These principles must now be applied to the numerous inventory items in question. The discussion will be organized by exhibit number. Other principles of law, applicable to particular invoice items, will be discussed in the appropriate place.
1. All-Type Printing, Inc.
A. Invoice 214024 — Tape
This modest invoice item encapsulates many of the recurrent problems in this case and will be discussed rather fully. All-Type is a commercial printer. Arkin-Medo sold it tape. Commercial printers use tape to hold things down in the printing process. The tape may or may not be part of the printer's final product, depending on the job. When a printer runs a final print, the tape will not be part of the final product. As mentioned, however, printers often do trade shop work, setting up film or flats. In such a case, the set-up will be the printer's final product. This final product may include tape used to position the film or flat. When the printer buys the tape, it will be unable to ascertain how the tape will eventually be used.
Under these circumstances, it can hardly be said that the printer has an affirmative intention to resell the tape at the time of purchase. Arkin-Medo, which has considerable knowledge concerning the way in which commercial printers work, can fairly be charged with knowledge of this fact. But what about the statutory exception for a purchaser's inability to ascertain its use? Conn. Gen. Stat. § 12-410(2), as mentioned, provides that a resale certificate may be taken in good faith from a person who "is unable to ascertain at the time of purchase whether the property will be sold or will be used for some other purpose." Does that provision apply here? Although the question is a close one, I have concluded that it does not. CT Page 8676
The "inability to ascertain" alternative set forth in § 12-410(2) makes sense when a buyer purchases an indivisible item that he does not know whether he will sell or use. The tax code, taken as a whole, ensures that the sales and use tax will eventually be collected on that item one way or the other. This can be illustrated by a hypothetical that slightly alters the facts at hand. Suppose that a commercial printer has a small retail outlet at the front of its shop in which it sells, among other things, rolls of tape. When our hypothetical printer buys a particular roll of tape, it does not know whether it will use the tape in its printing process or sell it at the retail outlet. The seller cannot be charged with this indecision and may take a resale certificate in good faith. But the tax coffers are nevertheless protected. If the printer uses the tape in its printing process, it must pay the sales tax pursuant to § 12-410(4)(a). If it sells the tape at the front of the shop, the sales tax will be collected at the register. The tax is paid either way.
Compare the "inability to ascertain" scenario just set out with the situation involved in this case. A printer buys a roll of tape. The tape will be broken up. Some of the tape will end up as part of trade shop work that is sold to other printers. The rest of the tape will be consumed in the printing process. If a resale certificate may be accepted in good faith in this situation, no tax on the tape that is consumed will ever be collected. The only sales tax that will ever be collected will be on the portion of the tape that ends up as part of trade shop work. The rest will go untaxed. This contravenes a basic principle of sales and use taxation, explained at an early date by the Supreme Court of the United States, that "all tangible personal property sold or utilized in [the taxing state] is taxed once for the support of the state government." SouthernPacific Co. v. Gallagher, 306 U.S. 167, 171 (1939).
There is a theoretical method of avoiding this problem, but it is not a satisfactory one. Theoretically, a printer like All-Type could pay the sales tax on the percentage of the roll of tape that is consumed. Such a requirement, however, would create an administrative CT Page 8677 nightmare for both the printer and the DRS. At argument in this case, both Arkin-Medo and the DRS took the position that it is not appropriate to require that the sales tax be paid based on the percentage of an item actually consumed by the purchaser. As a practical matter, payment of the sales tax upon purchase of an item must be an all-or-nothing proposition.
The appropriate way to analyze the purchase of the tape is by use of the primary purpose test. The Connecticut Supreme Court has held that, "[i]t is the primary purpose for which the personal property was purchased and put to use that controls the determination of the property's taxability." American TotalisatorCo. v. Dubno, 210 Conn. 401; 409, 555 A.2d 414
(1989). Usages of purchased property that are "incidental to the primary purpose" are not controlling. Id. (Emphasis in original.) As far as the record shows, the primary purpose for which commercial printers like All-Type purchase tape is to use it in the course of the printing process. The fact that tape sometimes remains attached to a finished product is incidental to the primary purpose.
This is obviously a troubling area of the law. But in a gray area such as this, a fundamental rule of statutory construction is decisive. Statutes creating tax exemptions must be strictly construed against the party claiming an exemption. The sale for resale exemption may be used only if the property sold was "clearly for resale rather than being `used' by the [purchaser.]" White Oak Corp. v. Department of RevenueServices, 198 Conn. 413, 421, 503 A.2d 582
(1986). The property sold here was not "clearly for resale." The record, as mentioned, does not show that, in purchasing tape, All-Type (or any other commercial printer) had a primary purpose other than to use that tape in the course of the printing process. Moreover, the record does not show that the percentage of tape actually ending up as part of trade shop work is anything other than a de minimus amount. Under these circumstances, the law simply does not allow the sale for resale exemption to be used.
The final consideration is Arkin-Medo's level of CT Page 8678 knowledge. Arkin-Medo, as mentioned, is knowledgeable about the way in which commercial printers work. This is not a case of a seller being deceived by a buyer. If Arkin-Medo was ignorant of anything, it was not the facts but the law. Arkin-Medo seems to have made a generous assumption, here and elsewhere in the case, that even the most incidental appearance by one of its products in the final product of a buyer qualified the sale as a sale for resale as long as a resale certificate appeared in the file. This assumption is incorrect. All-Type did not resell the tape, and this sale was not a sale for resale.
B. Invoice 218930
1. Film
(This invoice is incorrectly listed on Revised Exhibit 51 as invoice 218938.)
Arkin-Medo sold film to All-Type. As is the case with tape, commercial printers use the film in different ways. If they run a final print, the film is consumed. If they do trade shop work, the film may either be consumed in making flats or simply be positioned as film. In this latter case, film will be part of the final product. Otherwise, it will not. The printer will not know the eventual use when it purchases the film.
The analysis applied to tape is fully applicable to film purchased in this context. This is not a sale for resale.
2. Blades
Arkin-Medo sold knife blades to All-Type. These are used in the production process and are not resold in any form. The analysis here is much more clear-cut than in the case of tape or film. This sale cannot be viewed as a sale for resale under any circumstances.
2. Bell Partners, Inc.
A. Invoice 213220 — Film CT Page 8679
Arkin-Medo sold film to Bell Partners. The resale certificate states that Bell is in the "graphics" business. The record contains no evidence of Bell's specific activities and no evidence that Bell did anything other than consume the film entirely in its production process. Any other finding would be based on speculation. Under these circumstances, the sale cannot be found to be a sale for resale.
B. Invoice 215820
1. Film
For the reasons just stated, this cannot be found to be a sale for resale.
2. Chemicals
Arkin-Medo sold chemicals to Bell. Broadly speaking, chemicals are used by printers in two ways. They are used to develop film. They may also be applied to film in a coating process. When a printer prints a final product, these chemicals are consumed in the printing process. When a printer does trade shop work, some portion of the chemicals may be contained in the trade shop's final product. This result can come about in one of two ways. When film is developed, it is possible that a microscopic portion of the developing chemicals will not be washed away. This would not be an intentional result. In addition, if a chemical is used for coating purposes, a coat of chemicals will remain. The record does not allow the amount of chemicals used for coating purposes to be quantified. There is no reason to believe that it is anything other than small.
The proper analysis of these facts in the case of a commercial printer will be discussed later in this memorandum of decision. The specific problem in the case of Bell, as already explained, is that there is no evidence of Bell's specific activities. The record contains no evidence that Bell did anything other than consume the chemicals directly in its production process. Any other finding would be based on speculation. Under these circumstances, the sale cannot be found to be a sale for resale. CT Page 8680
3. Birdseye Printing Co. — Invoice 212548 — Film
Birdseye is a commercial printer. Arkin-Medo sold it film. For the reasons discussed with respect to All-Type, this is not a sale for resale.
4. Brady Printing Co. — Invoices 211906, 214311 
219267 — Film
Brady is a commercial printer. Arkin-Medo sold it film. For the reasons discussed with respect to All-Type, these are not sales for resale.
5. Brooks Community Newspaper
A. Invoice 211206
1. Film
Brooks publishes newspapers. Arkin-Medo sold it film. Film is entirely consumed in the production of newspapers. Arkin-Medo suggests that some film might be resold to photographers, but this submission is entirely speculative. For the reasons discussed with respect to All-Type's purchases of blades, this is not a sale for resale.
2. Chemicals
Arkin-Medo also sold chemicals to Brooks. All of these chemicals would be consumed in the production of newspapers. As is the case with film, this is not a sale for resale.
3. Paper
Arkin-Medo sold paper to Brooks. This is photographic paper, not newsprint. As is the case with film, this is not a sale for resale.
4. Batteries
Arkin-Medo sold batteries to Brooks. These would be entirely consumed in the printing process. As is the CT Page 8681 case with film, this is not a sale for resale.
B. Invoice 213373 — Film
For reasons already discussed, this is not a sale for resale.
C. Invoice 216518 — Film Paper
For reasons already discussed, neither of these products were sold for resale.
6. Capitol Color, Inc. — Invoice 215569
A. Film
Capitol Color is a commercial photo lab. Arkin-Medo sold it film. It is entirely possible that a commercial photo lab will sell film at the front of the store, much as in the hypothetical set forth with respect to All-Type. If Capitol's resale certificate were in order with respect to this purchase, the argument for treating this as a sale for resale would be forceful. The resale certificate, however, is not in order. The description of the products to be purchased from the seller, as set forth in the certificate, is "paper chemistry for film processing." The purchase of film is not mentioned. As explained above, the certificate must refer to the property being sold. Because this certificate does not, this sale cannot be found to be a sale for resale.
B. Chemicals
Arkin-Medo also sold chemicals to Capitol Color. In this case, the sale is covered by the resale certificate. The problem here, much as is the case with respect to commercial printers who purchase chemicals, is that, at least as far as the record indicates, most of these chemicals will be consumed in the production process. Arkin-Medo appears to hope that the fact that some (presumably small or microscopic) amount of chemicals may adhere to the finished product will save it. This hope, however, is not well grounded. CT Page 8682
As in the case of a commercial printer purchasing tape, the primary purpose test is controlling. "[I]f property is purchased as an aid in the manufacturing process, it is taxable despite the fact that some portion remains in the finished product." Kaiser Steel Corp. v.State Board of Equalization, 593 P.2d 864, 867 (Cal. 1979). The primary purpose for which a commercial photo lab purchases chemicals is as an aid in the manufacturing process. This cannot be found to be a sale for resale.
[Certificates 7 8 have been resolved by the parties.]
9. Chromakers Inc. — Invoice 216560 — Chemicals
Chromakers' resale certificate describes it as being in the "audio visual slide business." Arkin-Medo sold it chemicals. For the reasons discussed with respect to Capitol Color, this cannot be found to be a sale for resale.
10. Clarion Mark and Communications, Inc.
A. Invoice 212905 — Film and Chemicals
Clarion's resale certificate describes it as a "Service Firm (reseller)." The record contains no other evidence of what Clarion does. Arkin-Medo sold it film and chemicals. The chemicals were sold in large cubes, and Arkin-Medo does not seriously contend that Clarion was likely to resell these cubes in any normal sense of the word. Assuming that Clarion is in what might broadly be referred to as the publishing business, all or almost all of these purchases would be consumed in the production process. This cannot be found to be a sale for resale.
B. Invoice 218158
1. Chemicals
For the reasons just discussed, this cannot be found to be a sale for resale.
2. Miscellaneous CT Page 8683
The same invoice shows two miscellaneous purchases. One is six boxes "of 200 #14201 4x5 Kleer-Vu Sleeve 022 Frost Back." The second is twenty-four "Apllo Hot/Cold Water CJNO Filter Cartridge[s]." Further identification of these items, or their uses, would involve sheer speculation. This cannot be found to be a sale for resale.
11. Columbia Printing Co.
A. Invoices 211325 215070 — Film
Columbia is a commercial printer. Arkin-Medo sold it film. For the reasons discussed with respect to All-Type, these are not sales for resale.
B. Invoice 217102
1. Film
This is not a sale for resale.
2. Chemicals
Arkin-Medo sold chemicals to Columbia. The use of chemicals by commercial printers has been discussed with respect to Bell Partners. The analysis here is essentially the same as that set forth with respect to the sale of chemicals to Capitol Color. The primary purpose test is controlling. The primary purpose for which a commercial printer purchases chemicals is as an aid in the manufacturing process. This cannot be found to be a sale for resale.
C. Invoices 217319, 213331, 213332, 213330 214316 — Film
These are not sales for resale.
D. Invoice 215712
1. Film
This is not a sale for resale. CT Page 8684
2. Miscellaneous
Columbia purchased "100 sheets 31x41 .005 Orange Nation-Wide Plastimask Masking Viny." Further identification of this item, or its uses, would involve sheer speculation. This cannot be found to be a sale for resale.
E. Invoices 215714, 214713, 218075 218837 — Film
These are not sales for resale.
F. Invoice 218883 — Miscellaneous
This invoice item consists of several hundred "savage glassine envelopes" and six "1/2 ounce 3M Viking Tusche." The identity of the latter item is entirely a matter of speculation. The basic concept of a glassine envelope, in contrast, seems clear, but the record contains no evidence to suggest whether a commercial printer would resell these items or consume them in the production process. These cannot be found to be sales for resale.
G. Invoice 219082 — Miscellaneous
This is another purchase of one hundred sheets of "Orange Nation-Wide Plastimask Masking Viny." This cannot be found to be a sale for resale.
H. Invoice 219453 — Film
This cannot be found to be a sale for resale.
12. Converters Scan Art Enterprises, Inc. — Invoices 211264, 214877 217977 — Chemicals
Converters' resale certificate states that it is in the business of "manufacturing printing plates. Film and art preparation." The record does not otherwise indicate the nature of its business. Arkin-Medo sold it chemicals. Many, if not all of these chemicals, appear to be used in the developing process. The analysis used with respect to the sale of chemicals to Capitol Color applies here. This is not a sale for resale. CT Page 8685
13. Curtis Packaging Corp.
A. Invoice 211568
1. Film
Curtis' resale certificate states that it "manufacture[s] folding paper cartons." Arkin-Medo sold it film. There is no indication on the resale certificate that the film is to be resold. This is not a sale for resale.
2. Miscellaneous
Arkin-Medo sold Curtis a case of eighteen rolls of "Veratec Webril Wipes." The record contains no hint of what this product is. Any affirmative finding would be based on speculation. This cannot be found to be a sale for resale.
B. Invoice 212122 — Paper
Arkin-Medo sold Curtis a quantity of "Dupont BLP Bright Light Contact Paper." This is photographic paper and would be consumed in the manufacturing process. This cannot be found to be a sale for resale.
C. Invoice 218726 — Film
This cannot be found to be a sale for resale.
14. Cotter Graphics — Invoice 219277
A. Film
Cotter does color separation and film stripping for the trade. It assembles film images onto flats and provides assembled images to printers ready for plates. Arkin-Medo sold it film. In this case, the primary purpose test indicates that this was a sale for resale. Given the nature of Cotter's business, it is likely that the primary purpose of this purchase was to resell the film as part of Cotter's final product. At a minimum, Arkin-Medo, armed with its resale certificate, could legitimately assume this. This is a sale for resale. CT Page 8686
B. Tape
Arkin-Medo also sold tape to Cotter. Arkin-Medo could legitimately assume that the primary purpose for which Cotter purchased the tape was to use the tape to hold down film as part of its final product. Although this is something of a close case, because a portion of the tape is almost certainly consumed in the manufacturing process, this may be treated as a sale for resale.
15. Fairfield Graphics, Inc. — Invoice 216841 — Chemicals
Fairfield Graphics is a commercial printer. Arkin-Medo sold it chemicals. For reasons already discussed, this is not a sale for resale.
16. Focal Group, Inc. — Invoice 211246 — Chemicals
Focal's resale certificate describes itself as being an "AV Company" that deals with "Meeting Materials (Slides, Brochures, etc.)." The record contains no additional information regarding its activities. Arkin-Medo sold it chemicals. From the description of its activities in its resale certificate, it seems likely that these chemicals were used in the manufacturing process of slides and brochures. The likelihood of any chemicals being incorporated in the final product seems minimal. This cannot be found to be a sale for resale.
17. Graphic Image
A. Invoice 211481 — Chemicals
Graphic Image is a commercial printer. Arkin-Medo sold it film. For reasons already discussed, this is not a sale for resale.
B. Invoice 210812 — Film
Arkin-Medo also sold film to Graphic Image. This is not a sale for resale. CT Page 8687
C. Invoice 211822 — Miscellaneous
Arkin-Medo sold to Graphic Image one hundred sheets of "Nation-Wide E-Z Mat Clean Up Sheets." The record does not indicate what these items are. In the absence of such a record, any affirmative finding would be based on speculation. This cannot be found to be a sale for resale.
D. Invoice 212331 — (Invoice Missing)
This invoice is missing. Any finding involving its content would be the sheerest speculation. This cannot be found to be a sale for resale.
E. Invoice 214758
1. Film
This is not a sale for resale.
2. Chemicals
This is not a sale for resale.
3. Paper
Arkin-Medo sold Graphic Image a quantity of "proof paper." The evidence indicates that this is photographic paper, not printing stock. Graphic Image's primary purpose in purchasing this item would be to use it in the manufacturing process. It would be consumed in that process. This is not a sale for resale.
F. Invoice 215105
1. Film
This is not a sale for resale.
2. Paper
This is not a sale for resale.
G. Invoice 215799 — Miscellaneous CT Page 8688
The invoice number here reflects some evident confusion in the preparation of Revised Exhibit 51. No invoice "215799" has been submitted. The description of this invoice contained in Revised Exhibit 51 is actually a description of an invoice submitted as invoice 215779. This latter invoice consists of three items:
(1) Fifty sheets of "Dupont BLD-4X X-Stat Bright Lite Dup. " The record does not indicate what this item is, but it is also listed in invoice 216262, discussed infra, where the parties treat it as film. This is not a sale for resale.
(2) Four gallons of "Part-B Anitec Reprofix 800L Hardener." The record does not indicate what this item is. This will not be found to be a sale for resale.
(3) A package of razor blades. Blades are consumed in the manufacturing process. This is not a sale for resale.
H. Invoice 215778 — Paper
This is not a sale for resale.
I. Invoice 215779 — Miscellaneous
The confusion pertaining to invoice "215799," discussed above, is revisited here. As already mentioned, no invoice "215799" has been submitted. An invoice 215779 has been submitted, but that invoice matches the description of invoice "215799" contained in Revised Exhibit 51 and has already been discussed. The invoice denominated invoice "215779" on Revised Exhibit 51 has not been submitted and will be treated as a missing invoice. There will be no speculation as to its contents. This cannot be found to be a sale for resale.
J. Invoices 213584 216262 — Film
These are not sales for resale. CT Page 8689
K. Invoices 216236 218029 — Paper
These are not sales for resale.
L. Invoice 219144
1. Chemicals
This is not a sale for resale.
2. Tape
This is not a sale for resale.
[18 has been resolved by the parties.]
19. Hanley-Accurate, Inc. — Invoice 218552
1. Film
Hanley-Accurate's resale certificate states that it is in the business of selling "offset plates negatives." The record contains no further evidence of its activities. Arkin-Medo sold it film. Although the paucity of evidence makes this something of a close case, it is well within the realm of possibility that a business of this description could sell film as part of its final product. Arkin-Medo, armed with a resale certificate, could at least legitimately make this assumption. This is a sale for resale.
2. Chemicals
Arkin-Medo also sold chemicals to Hanely-Accurate. Although small amounts of these chemicals might become part of its final product, Hanley-Accurate's primary purpose in making this purchase would be to consume these chemicals in the manufacturing process. This is not a sale for resale.
[20 has been resolved by the parties.]
21. Illustrated Current News — Invoice 211711 — Paper
Illustrated Current News' resale certificate states CT Page 8690 that it manufactures "display fixtures" and distributes "printed matter." The record contains no further evidence of its activity. Arkin-Medo sold it paper. This is photographic paper, not printing stock. This item would be consumed in the manufacturing process. This is not a sale for resale.
22. Image Processing
A. Invoice 215568 — (Missing Invoice)
Image Processing is a color separator to the trade. This invoice is missing. There will be no speculation as to its contents. This cannot be found to be a sale for resale.
B. Invoice 216847 — Chemicals
Arkin-Medo sold chemicals to Image Processing. Although some of these chemicals might inhere in Image Processing's final product, the primary purpose for which these chemicals are purchased is for use in the manufacturing process. This is not a sale for resale.
C. Invoice 216848 — Paper
Arkin-Medo also sold paper to Image Processing. As in previous invoices, this is photographic paper that would be consumed in the manufacturing process. This is not a sale for resale.
D. Invoice 218638 — Chemicals
This is not a sale for resale.
23. Imperial Graphics
A. Invoices 211204 217223 — Chemicals
Imperial Graphics is a commercial printer. Arkin-Medo sold it chemicals. These are not sales for resale.
B. Invoice 214482 — Film CT Page 8691
This is not a sale for resale.
24. Inter-Process Service, Inc.
A. Invoice 213182
1. Chemicals
Inter-Process is a color separator to the trade. Arkin-Medo sold it chemicals. This is not a sale for resale.
2. Miscellaneous
Arkin-Medo sold a magnifying instrument to Inter-Process. It is quite evident that this is an instrument used in the manufacturing process and not resold. This is not a sale for resale.
B. Invoice 211281
1. Chemicals
This is not a sale for resale.
2. Miscellaneous
This item is an aerosol can of glass cleaner. It is evident that this item is used in the manufacturing process and is not resold. This is not a sale for resale.
C. Invoice 213629 — Miscellaneous
This items consists of twelve "Pako Gear Assembl[ies]." It is evident that this item is used in the manufacturing process and is not resold. This is not a sale for resale.
D. Invoice 215462 — Miscellaneous
This item is a "Transport Enco Belt." It is evident that this item is used in the manufacturing process and is not resold. This is not a sale for resale.
E. Invoice 216888 CT Page 8692
1. Chemicals
This is not a sale for resale.
2. Tape
This may be treated as a sale for resale under the analysis used with respect to Cotter Graphics.
F. Invoice 217296 — Paper
This is not a sale for resale.
G. Invoice 218824
1. Chemicals
This is not a sale for resale.
2. Tape
This may be treated as a sale for resale under the analysis used with respect to Cotter Graphics.
25. Metro Photo Engraving, Inc. — Invoice 210404 — Chemicals
Metro's resale certificate describes it as a manufacturer of "printed matter, graphic arts, etc." The record contains no other evidence of its activities. Arkin-Medo sold it chemicals. This is not a sale for resale.
[26-28 have been resolved by the parties.]
29. Penrose Press, Inc.
A. Invoices 211150 210399 — Chemicals
Penrose is a commercial printer. Arkin-Medo sold it chemicals. These are not sales for resale.
B. Invoice 212530 — Film
This is not a sale for resale. CT Page 8693
C. Invoice 218119
1. Miscellaneous
This item consists of five different items: a "FNS-R Plate," one hundred "Baseline Goldenrod Masking Sheets," "Acme/Chaston Cotton (Non-Sterile)," a quart of "Fuji Storage Gum," and a gallon of "Varn Metering Wash." These items are quite evidently consumed in the manufacturing process. This is not a sale for resale.
2. Tape
This is not a sale for resale.
30. Peter Tepper Photographer — Invoices 215056 
219023 Chemicals
Peter Tepper Photographer describes himself in his resale certificate as engaged in the business of photography. Arkin-Medo sold him chemicals. This is not a sale for resale.
31. Pre-Press Graphics, Inc. — Invoice 213852 — Chemicals
Pre-Press is a color separator to the trade. Arkin-Medo sold it chemicals. This is not a sale for resale.
32. Printing Plus — Invoice 214195 — Tape
Printing Plus describes itself in its resale certificate as engaged in the business of commercial printing The record reveals no further details of its business Arkin-Medo sold it tape. This is not a sale for resale.
33. Production Typographers, Inc. — Invoice 214600
1. Film
Production Typographers is a typographer to the trade. Arkin-Medo sold it film. The film would be consumed in the process of producing typography. This is not a sale for resale. CT Page 8694
2. Paper
This is not a sale for resale.
34. P.M. Ink
A. Invoice 214214
1. Chemicals
P.M. Ink is a commercial printer. Arkin-Medo sold it chemicals. This is not a sale for resale.
2. Tape
This is not a sale for resale.
B. Invoice 218194 — Film
This is not a sale for resale.
[35 has been resolved by the parties.]
36. Robert Biel Associates — Invoice 208979 — Chemicals
Biel describes itself in its resale certificate as in the "audio visual, video, typesetting, graphics" business. Arkin-Medo sold it chemicals. This is not a sale for resale.
37. Set to Fit, Inc.
A. Invoice 214597 — Miscellaneous
Set to Fit is a typographer to the trade. Arkin-Medo sold it one hundred sheets of "Nation-Wide Plastimask Masking Viny." The nature of this item does not appear from the evidence. There will be no speculation. This cannot be found to be a sale for resale.
B. Invoice 216169 — Chemicals
This is not a sale for resale.
38. Sound Graphics — Invoice 213859 — Chemicals CT Page 8695
Sound Graphic's resale certificate describes it as being in the "`Pre-Press' Film Prep" business. No other evidence of its activities appears in the record. Arkin-Medo sold it chemicals. This is not a sale for resale.
39. Spectrum
A. Invoice 211642 — Chemicals
Spectrum is a commercial printer. Arkin-Medo sold it chemicals. This is not a sale for resale.
B. Invoice 212509 — Paper
This, once again, is photographic paper. This is not a sale for resale.
[40 has been resolved by the parties.]
41. Strout's Lithographics, Inc.
A. Invoice 211265 — Paper
Strout's is a commercial printer. Arkin-Medo sold it paper. This is photographic paper. This is not a sale for resale.
B. Invoice 213425
1. Film
This is not a sale for resale.
2. Chemicals
This is not a sale for resale.
C. Invoice 214013 — Tape
This is not a sale for resale.
D. Invoice 219576 — Miscellaneous
This sale consists of two items: a "20 Foot Litho CT Page 8696 Score for Cardboard or Paper" and a "20 Foot 16 Tooth Litho Perf for Card." It is quite evident that these are items used in the manufacturing process. This is not a sale for resale.
42. Sudden Impact Corporation — Invoice 216871 — Film
Sudden Impact's resale certificate describes it as being in the "corporate communications" business. The record does not further indicate the nature of its business. Arkin-Medo sold it film. This cannot be found to be a sale for resale.
43. Swan Color Graphics, Inc.
A. Invoice 213052 — Chemicals
Swan is a color separator to the trade. Arkin-Medo sold it chemicals. This is not a sale for resale.
B. Invoice 214891
1. Chemicals
This is not a sale for resale.
2. Miscellaneous
This sale consists of three items: a gallon of "Anchor/LKK Film Kleen," a case of "Veratek Webril Wipes," and a "Dupont Hand Las-Stik Cloth Roll." The record does not indicate the nature of these items. It seems at least reasonably clear that they are intended for use in the manufacturing process. This is not a sale for resale.
C. Invoice 213902 — Miscellaneous
This sale also consists of three items: 200 "Yellow Accurate Dowels," 500 "Blue Accurate Dowels," and 500 "Round Black Accurate Centerline Fitter[s]." It is quite evident that all of these items are intended for use in the manufacturing process. This is not a sale for resale. CT Page 8697
D. Invoices 216502, 219016 218974 — Chemicals
These are not sales for resale.
E. Invoice 216568 — Miscellaneous
This sale consists of fifty-five pounds of "Varn Anti Set-Off Powder." The record contains no further description of this item. This cannot be found to be a sale for resale.
44. S.G.I. Rembrandt Printing, Inc.
A. Invoice 212603 — Miscellaneous
S.G.I. is a commercial printer. Arkin-Medo sold it twelve cans of "Varn Glass Cleaner." It is quite evident that this item is intended for use in the manufacturing process and is not resold. This cannot be found to be a sale for resale.
B. Invoice 210400
1. Film
This is not a sale for resale.
2. Chemicals
This is not a sale for resale.
3. Paper
This is photographic paper. This is not a sale for resale.
4. Miscellaneous
This item is a "Kimwipes Bulk Pack." The record does not further indicate the nature of this item. This cannot be found to be a sale for resale.
C. Invoice 212601 — Chemicals
This is not a sale for resale. CT Page 8698
D. Invoice 213109
1. Film
This is not a sale for resale.
2. Chemicals
This is not a sale for resale.
3. Paper
This is photographic paper. This is not a sale for resale.
E. Invoices 208788 210549 — Film
These are not sales for resale.
[45 has been resolved by the parties.]
46. The Envelope Factory — Invoice 218861 — Film
The Envelope Factory manufacturers envelopes. Arkin-Medo sold it film. This would be entirely consumed in the manufacturing process. This not a sale for resale.
47. Van Dyck Printing
A. Invoice 211565 — Film
Van Dyck is a commercial printer. Arkin-Medo sold it film. This is not a sale for resale.
B. Invoice 212683 — Miscellaneous
This invoice consists of two items. The first is a "Theimer Photocell." This is quite evidently an item used in the manufacturing process and is not resold. The second item is a "Repair Charge" for "Repair on Montakop Console Plate Maker." This second item is evidently a service and not sale of tangible personal property. It cannot be found to be a sale for resale. CT Page 8699 Because Arkin-Medo does not claim that this is a service not subject to the sales and use tax in the first place, the question of its taxability cannot be further considered.
C. Invoice 213186
1. Film
This is not a sale for resale.
2. Chemicals
This is not a sale for resale.
3. Paper
This is photographic paper. This is not a sale for resale.
D. Invoice 213685 — Film
This is not a sale for resale.
E. Invoice 209769 — Miscellaneous
This is a sale of twenty-four "Black Sanford King Size Marker[s]." It is quite evident that these are intended for use in the manufacturing process and are not resold. This cannot be found to be a sale for resale.
F. Invoices 213630 214500 — Film
These are not sales for resale.
G. Invoice 214370 — Chemicals
This is not a sale for resale.
H. Invoices 214841 214735 — Film
These are not sales for resale.
1. Invoice 215115 — Paper CT Page 8700
This is photographic paper. This is not a sale for resale.
J. Invoice 214863 — Chemicals
This is not a sale for resale.
K. Invoice 217103
1. Film
This is not a sale for resale.
2. Paper
This is photographic paper. This is not a sale for resale.
L. Invoices 217320 218088 — Film
These are not sales for resale.
M. Invoice 218838
1. Film
This is not a sale for resale.
2. Chemicals
This is not a sale for resale.
3. Miscellaneous
This consists of twelve items. Each is a "CIOPW4 For 3M MR-424 FPC Filter." The record contains no further indication of the nature of this item. There will be no speculation. This cannot be found to be a sale for resale.
4. Tape
This is not a sale for resale.
N. Invoice 219480 — Film CT Page 8701
This is not a sale for resale.
48. Yunz Industries
A. Invoice 211275
1. Film
Yunz is a silkscreen printer. Arkin-Medo sold it film. It is evident that this would be entirely consumed in the manufacturing process. This is not a sale for resale.
2. Chemicals
Chemicals, like film, would be entirely consumed in Yunz's manufacturing process. This is not a sale for resale.
B. Invoice 216584
1. Film
This is not a sale for resale.
2. Chemicals
This is not a sale for resale.
Conclusion
The sales of film and tape to Cotter Graphics, the sale of film to Hanley-Accurate, Inc., and the sales of tape to Inter-Process Service, Inc. are found to be sales for resale. The remaining sales in question are not sales for resale.
The parties shall submit proposed orders within fourteen days of the date of this decision.